**BOSTON CARRIER, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**Habit Motor Lines, Inc., Intervenor.**

**No. 83–1542.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 14, 1983.

Decided March 2, 1984.

Robert K. Goren, Washington, D.C., for petitioner.

Dennis J. Starks, Atty. I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, and Ellen D. Hanson, Associate Gen. Counsel, I.C.C., Washington, D.C., were on the brief, for respondents. Robert B. Nicholson and William J. Roberts, Attys. Dept. of Justice, Washington, D.C., also entered appearances for respondents.

Wesley S. Chused and Frank J. Weiner, Boston, Mass. were on the brief for intervenor.

Before TAMM and STARR, Circuit Judges, and J. SMITH HENLEY,* United States Senior Circuit Judge for the Eighth Circuit.

Opinion for the court filed by Senior Circuit Judge HENLEY.

HENLEY, Senior Circuit Judge:

Boston Carrier, Inc. (BCI) seeks review of a decision of the Interstate Commerce Commission granting a certificate of public convenience and necessity to Habit Motor Lines, Inc. authorizing Habit to transport commodities between certain points in the United States. BCI's primary contention is that the Commission has failed to make an independent and adequate finding that Habit is fit, willing, and able to provide the transportation services. As will be explained, we conclude that the Commission's findings are adequate and therefore affirm.

Habit's application for authority was supported by seven shippers. Three competing carriers, including petitioner BCI, filed protests. BCI and the other protestants specifically challenged Habit's fitness based on the prior activities of Habit's president, Ms. Ingrid E. Rose Gaptjern.[1]

Gaptjern is a former employee of BCI. After leaving BCI, Gaptjern became associated with North Shore Loads, Inc., which acted as an agent for Nationwide Distributors, Inc. Nationwide was subsequently found to be a sham agricultural cooperative and was assessed a $6,000.00 civil forfeiture penalty in federal district court. Gaptjern then became associated with a newly formed motor carrier named Avion Transport, Inc. Avion's other shareholders subsequently accused Gaptjern of diverting corporate assets to her own use and discharged her as Avion's manager. A civil action based on this claim was dismissed, but Gaptjern was indicted for having improperly diverted Avion's assets. Gaptjern then formed Habit Lines, Inc. and applied for a certificate from the Commission.

The Commission has issued four decisions regarding Habit's application. In the first decision, served September 28, 1982, a Commission Review Board approved the application. The Board noted both Avion's shareholders' civil suit against Gaptjern and the pendency of the indictment. As to Habit's fitness the Board first considered its willingness and ability to comply with the Commission's rules and regulations. The Board found that the only activity which cast doubt on Habit's ability to comply with the Commission's rules was Gaptjern's association with the sham agricultural cooperative. However, since Gaptjern was not employed by Nationwide but by North Shore Loads, Nationwide's agent, the Board decided that the relationship between Gaptjern and Nationwide was not such as to require a finding that Gaptjern was unwilling to comply with the Commission's rules. The Board also considered Habit's ability to treat its shippers fairly and to assure the protection of their goods and the public. The Board found nothing in the record to show that Habit did not have this ability.[2] The Board indicated its unwillingness to find that Gaptjern's prior activities while in charge of Avion rendered the firm she now heads unfit. Finding ample support for seven shippers who expressed a need for Habit's proposed service and also finding that the benefit to the public outweighed any poten-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

1. It is interesting to note that there is also pending before this court BCI's petition to review a Commission decision finding BCI unfit to receive a certificate of authority. *Boston Contract Carrier, Inc. v. ICC,* No. 82–2140. Gaptjern attended BCI's fitness hearing, and the evidence in that case included references to the instant proceedings.

2. The Board specifically noted that at least one substantial shipper, Nashua Corporation, was evidently very pleased with the service it obtained through Gaptjern since Gaptjern took Nashua's business with her when she left BCI's employ.

tial harm to the protestants, the Board granted Habit's application.[3]

The protestants appealed arguing that Habit was not fit to provide the proposed service. A three-member Division of the Commission reviewed the prior ruling in a decision served December 29, 1982. Although the Division decided that there was a direct connection between the charges against Gaptjern in the indictment and Gaptjern's ability as Habit's president to conduct the proposed services in a lawful manner, it concluded that the pendency of the indictment was not sufficient by itself to justify a finding of unfitness. Consequently, it approved Habit's application subject to the condition that the authority to continue operations would be voided in the event of a conviction against Gaptjern. Commissioner Simmons dissented from this decision stating that it was improper for the Commission to leave the possible voiding of the fitness determination to a criminal jury.

The protestants then filed discretionary appeals. With certain modifications,[4] the full Commission upheld the Division's conditional determination of fitness. Commissioner Simmons again dissented for basically the same reasons he gave in his dissent to the Division's decision and was joined by Chairman Taylor. Subsequently, the criminal indictment against Gaptjern was disposed of by the prosecutor's entry of a *nolle prosequi.* Thereafter, by decision served June 14, 1983, the Commission granted Habit's request to formally remove the condition on its authority. Chairman Taylor again dissented arguing that the Commission had not yet made its own independent fitness finding. BCI and other protestants then sought judicial review.

The Interstate Commerce Act governs the licensing of motor common carriers. The Act empowers the Commission to grant an application for a certificate if it finds (1) that the carrier is "fit, willing, and able to provide the transportation ... and to comply with this subtitle and regulations of the Commission," and (2) "that the service proposed will serve a useful public purpose, responsive to a public demand or need; unless the Commission finds, ... [that the proposed service] is inconsistent with the public convenience or necessity." 49 U.S.C. § 10922(b)(1). Although the 1980 Revision of the Interstate Commerce Act relaxed the requirements under the statute, the traditional requirement of a fitness finding was retained. *See Lodi Truck Service v. United States,* 706 F.2d 898, 900 (9th Cir.1983); *Ritter Transportation, Inc. v. ICC,* 684 F.2d 86, 87 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983).

We note initially that the standard for reviewing agency decisions is a narrow one. The agency's findings and conclusions must be upheld unless they are found to be "arbitrary, capricious, an abuse of discretion, [or] ... unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see Trailways, Inc. v. ICC,* 673 F.2d 514, 517 (D.C.Cir.), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 *reh'g denied,* 459 U.S. 983, 103 S.Ct. 320, 74 L.Ed.2d 296 (1982). The substantial evidence inquiry looks for a rational basis for the agency's decision in the evidence in the record while the arbitrary and capricious examination looks to "whether the action was fully informed and well considered...." *Id.* While these inquiries must be "searching and careful," we must uphold the decision "if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The Commission has broad expert discretion in ruling on common carrier applications but this discretion "is not without limits." *Trailways, Inc. v. ICC,* 673 F.2d at 517. We "must consider whether the decision was based on a consid-

---

**3.** The Board denied BCI's request that it hold an oral hearing and its request for an investigation by the Commission's Office of Compliance and Consumer Assistance.

**4.** The Commission modified the condition to provide that Habit's certificate of authority would be voided upon an initial conviction without waiting for any possible appeals to be decided. Further, the Commission stated that Habit's authority would only be voided if Gaptjern was convicted of the specific charges contained in the indictment and not if she was convicted of any other offense.

eration of relevant factors and whether there has been a clear error of judgment." *Ritter Transportation, Inc. v. ICC,* 684 F.2d at 88 (*quoting Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

BCI challenges only the Commission's finding that Habit is fit to receive the certificate. Rather than referring to evidence that Habit is unfit, BCI's contentions go more toward the way in which the Commission reached its conclusions. Specifically, BCI alleges that the Commission abrogated its statutory duty to make an independent finding of fitness. It argues that the Commission has never made an adequate inquiry or finding that Habit is fit, and that the Commission instead left the fitness determination to a criminal court.[5] The Commission responds that it fully considered all allegations relating to Habit's fitness to receive shipping authority and that the Commission's decision in this case is fully supported by the record.[6]

█ In its decision served April 5, 1983, the Commission fully considered all of BCI's arguments. The Commission noted initially

that the charges against Gaptjern were unproven and that she was entitled to a legal presumption of innocence. It nevertheless fully considered BCI's contention that Gaptjern was guilty of "bleeding" Avion's corporate assets. Against the allegations of Gaptjern's alleged misconduct, the Commission weighed the positive factors showing Habit to be fit. The Commission stated that Habit's employees are experienced in interstate commerce. It also noted that Habit previously has complied with all relevant laws and Commission regulations. In addition, in its earlier decision, the Commission considered Habit's willingness and ability to comply with the Commission's regulations. Also considered was Habit's willingness and ability to treat shippers fairly and to assure the protection of their goods and the public. It therefore appears that the Commission's decision considered relevant factors and that its pathway "may reasonably be discerned." *See Bowman,* 419 U.S. at 286, 95 S.Ct. at 442. We note that the showing that an applicant is fit "need not be elaborate." *Ritter Transportation, Inc. v. ICC,* 684 F.2d at 88. "So long as the

---

**5.** BCI also argues that the Commission erred in denying its request for an oral hearing. The Commission here used its "modified procedure" where a decision is rendered in the dispute based on written submissions. We disagree with BCI's contention. First, the decision whether to grant an oral hearing is generally a matter for the Commission's discretion. *See Lodi Truck Service v. United States,* 706 F.2d at 901; *C & H Transportation Co., Inc. v. ICC,* 704 F.2d 834, 848 (5th Cir.1983). The Commission may deny a hearing "even where material facts are disputed so long as the disputes may be adequately resolved by the written submissions." *Amador Stage Lines, Inc. v. United States,* 685 F.2d 333, 335 (9th Cir.1982). We do not believe the Commission abused its discretion by refusing to hold an oral hearing in this case since it reasonably could have found the factual disputes to be resolvable using its modified procedure. Secondly, BCI does not appear to have satisfied the Commission's regulations regarding requests for oral hearings. Requests for an oral hearing must specifically state what evidence would be presented, why the proposed evidence is material, and why an oral hearing is needed to bring this evidence out. *See* 49 C.F.R. § 1160.68(b). BCI's request fell short of evidentiary specificity and it has not enlightened this court as to what specific evidence it would present at a hearing. Finally,

we also note that BCI and the other protestants did not attempt to utilize the Commission's discovery procedures, *see* 49 C.F.R. §§ 1114.-21–.31. Had BCI availed itself of these procedures, the alleged need for an oral hearing may have been obviated or it is possible BCI could have demonstrated an oral hearing's necessity. *See C & H Transportation Co., Inc. v. ICC,* 704 F.2d at 848 n. 23.

**6.** The Commission argues that the only decision we should review in this case is the June 14, 1983 decision which found Habit fit without condition. It contends that the other decisions finding Habit conditionally fit are moot and hence should not be considered by this court. While to some extent removal of the condition may cast the case into different light, removal of the condition does not render completely moot the question whether the Commission has ever made an adequate fitness finding. The June 14 decision removing the condition based its action not only on the *nolle prosequi* but also on its earlier findings. Thus, we must consider both the June 14 decision and the rationale of the underlying decisions. Since the condition is no longer a part of Habit's operating authority, it is no longer necessary for us to express any opinion as to whether the Commission may validly incorporate such a condition into its grant of authority.

Commission takes account of ... the relevant factors, it cannot be faulted simply because it gives more weight to one factor than another." *International Detective Service, Inc. v. ICC*, 613 F.2d 1067, 1077 (D.C.Cir.1979). It is not for us to reweigh the relevant considerations. The unproven charges against Gaptjern related entirely to the use of corporate funds while she was in charge of Avion Transport. There has never been any allegations that the shipping public has not been treated fairly and honestly. Nor does it appear that Habit has violated the Commission's regulations in the past. Thus, BCI's contentions that the Commission has failed to make an independent fitness finding and that there is no evidence supporting its decision are belied by the record. Although the agency's certificate was conditioned, the agency nevertheless made a finding that Habit was fit at that point in time. Since there is substantial evidence supporting this finding, we will not substitute our judgment for that of the Commission.

BCI relies heavily on *Containerfreight Corp. v. ICC*, 685 F.2d 329 (9th Cir.1982), to support its position. In that case the Commission noted that there were "serious allegations of misconduct on the part of applicant's president." *Id.* at 333. In response to these allegations the Commission simply limited its grant of authority to a two-year term and referred the matter to the Office of Consumer Protection for investigation. The court held that the Commission had failed to assess the fitness of the applicant stating that "[t]here is no indication in the record ... that the Commission engaged in any weighing [of the evidence] at all." *Id.* Here, by contrast, the Commission specifically weighed the unproven charges of Gaptjern's misconduct, which she has steadfastly denied from the start, against the positive factors indicating Habit's fitness. The Commission in this case made a specific, final fitness determination based upon a full consideration of all the allegations. As the Commission noted, "Although the Division did not make a factual finding as to Ms. Gaptjern's guilt or innocence (which it left to a more appropriate forum—the criminal court), it did decide the regulatory consequences of both results." *Habit Motor Lines, Inc.*, No. MC–156046 (Sub.-No. 3), slip op. at 2 (ICC April 5, 1983). Thus, we do not deem *Containerfreight* to be controlling in these circumstances.

As indicated, the withdrawal of the condition as an operative part of the Commission's decision has obviated the need for an inquiry into the propriety of a conditional approach per se. *See* note 6 *supra*. However, we observe that the Commission's decision to issue a conditional certificate as opposed to some other course of action is at least understandable, even though it may have been, as is contended, unauthorized. In reaching its decision the Commission in part stated:

> We believe that the Division's conditional approach here to the issue of applicant's fitness is both appropriate in the circumstances and preferable to protestants' suggestion that the Commission hold the proceeding in abeyance pending either its own investigation or the outcome of the criminal proceeding. First, the Commission is not better able than the criminal court to develop the evidence and determine Ms. Gaptjern's guilt or innocence. Moreover, any attempt to conduct our own investigation would be an unnecessary and wasteful duplication of adjudicatory resources, and could interfere with the criminal proceeding. Second, to delay the administrative proceeding indefinitely, awaiting final resolution of the criminal case, could be unfair to both the applicant (if its president is eventually found innocent) and the supporting shippers, who have clearly demonstrated a current need for the proposed service. Furthermore, such needless delay is inconsistent with Congressional and judicial directives to complete our regulatory proceedings within reasonably short time frames. For all of these reasons, we conclude that the public would be better served by a conditional grant than by an indeterminant [sic] delay.

*Habit Motor Lines, Inc.*, No. MC–156046 (Sub.-No. 3), slip op. at 3 (ICC April 5, 1983). We voice no disapproval of the Commission's expressed concern for conservation of time and resources nor of its devo-

tion to what it conceived to be the public interest.

▉ Regardless of propriety of attachment of the condition, it is clear that its removal when the indictment was dismissed was proper. It appears the prosecutor entered the *nolle prosequi* because of the lack of evidence against Gaptjern. The complaining parties had been ordered to produce documentation which would prove their claims but they were unable or unwilling to do so. Since the reason for the condition no longer existed, it was both rational and reasonable for the Commission to remove it. We find no arbitrariness in the Commission's response to the *nolle prosequi*. We also note again that, in its decision removing the condition, the Commission specifically reiterated its finding of Habit's fitness based upon the entire record as it then stood.

In sum, finding adequate record support for the Commission's actions and no clear error of judgment or abuse of discretion, we affirm.