866 F.2d 1238
 AIRPORTER OF COLORADO, INC., d/b/a Front Range Airporter,
Inc., Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and The United States, Respondents,
Collins Coaches, Ltd., d/b/a Fort Collins Express Charter,
Inc., Intervenor.
 No. 87-1294.
 United States Court of Appeals,
Tenth Circuit.
 Submitted on the Briefs.[1]
Decided Jan. 26, 1989.
 
 Jerel L. Ellington and Mark W. Williams of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for petitioner.
 Charles F. Rule, Acting Asst. Atty. Gen., Robert S. Burk, Gen. Counsel, Henri F. Rush, Deputy Gen. Counsel, Robert B. Nicholson, and John P. Fonte, Attys., Dept. of Justice, Washington, D.C., Michael L. Martin, Atty., I.C.C., Washington, D.C., for respondents.
 James A. Beckwith, Wheat Ridge, Colo., for intervenor.
 Before SEYMOUR, BALDOCK and BRORBY, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Intervenor Collins Coaches, Ltd., (Collins), a motor carrier of passengers, applied to the Interstate Commerce Commission (ICC) for a certificate authorizing the transportation of passengers, both in interstate and intrastate commerce, over a system of regular routes extending generally between Stapleton International Airport, Denver, Colorado, on the one hand, and Cheyenne and Laramie, Wyoming, on the other hand. The application also sought authority to serve all intermediate points, including Fort Collins and Greeley, Colorado. The application was opposed by Airporter of Colorado, Inc., (Airporter), a motor common carrier of passengers licensed by the Colorado Public Utilities Commission to transport passengers between Fort Collins, Colorado, and Stapleton International Airport in Denver, Colorado. Prior to final disposition of Collins' application for permanent operating authority, Collins operated under a grant of temporary authority from the ICC.
 
 
 2
 The ICC granted Collins' application for permanent common carrier certification. Collins Coaches Ltd., ICC No. MC-190567 (July 30, 1986). The certificate issued by the ICC authorized Collins to transport passengers in interstate and foreign commerce and in intrastate commerce, without regard to state regulation, pursuant to the preemptive authority of the ICC described at 49 U.S.C. Sec. 10922(c)(2)(B).[2] Airporter's appeal of this decision to certify Collins was denied by the ICC.[3] Collins Coaches Ltd., ICC No. MC-190567 (Jan. 29, 1987). Airporter now petitions this court for review of the final ICC order as provided for by 28 U.S.C. Sec. 2342(5).[4]
 
 
 3
 Airporter seeks reversal of the ICC decision based on two main points of error. According to Airporter, the ICC was without jurisdiction under Sec. 10922(c)(2)(B) to grant Collins a certificate allowing intrastate service absent a finding that the intrastate service furnished by Collins bore a proper relation to Collins' interstate regular-route service. Airporter also claims that the ICC's denial of requests for discovery and an oral hearing effectively deprived Airporter of its statutory right to protest Collins' application. We affirm in part, reverse in part, and remand.
 
 I.
 
 4
 The disposition of this matter requires a summary of the decision inFunbus Systems, Inc. v. California Pub. Util. Comm'n, 801 F.2d 1120 (9th Cir.1986), and the related ICC rulings. The issue in Funbus was whether Sec. 10922(c)(2)(B) authorized the ICC to issue certificates approving intrastate motor carrier services which are conducted independently of interstate services. Funbus, 801 F.2d at 1125. The ICC construed the statute to permit authorization of an intrastate route if a carrier holds or will hold authority to conduct operations over an interstate route, without regard to any services actually conducted over the interstate route. Id. The Ninth Circuit reversed, stating that Congress intended for the ICC to preempt state regulation of intrastate motor common carrier operations only to the extent the intrastate traffic was part of actual interstate operations. Id. at 1129. The case was remanded so that the ICC could determine the proper nexus between intrastate and interstate operations necessary to support ICC authorization of intrastate service. Id.
 
 
 5
 After the decision of the Ninth Circuit in Funbus, but prior to the ICC's disposition on remand, Congress added 49 U.S.C. Sec. 10922(c)(2)(J) which states:
 
 
 6
 Limitation on intrastate certificates. Each certificate issued under this paragraph to provide intrastate transportation of passengers on any route shall be subject to a condition which limits the authority of the carrier to provide intrastate transportation service under the certificate only if the carrier provides regularly scheduled interstate transportation service on the route.
 
 
 7
 Surface Transportation and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100-17, Sec. 340, 101 Stat. 132 (1987). Based on this provision and its legislative history, along with the Ninth Circuit decision in Funbus, the ICC articulated on remand the parameters of the requisite nexus between intrastate and interstate operations.
 
 
 8
 According to the ICC, Congress intended that in order to support ICC authorization of intrastate service, interstate traffic "must be a regularly scheduled service, it must be actual, it must be bona fide and involve service in more than one State, and it must be substantial." Funbus Systems, Inc., ICC Nos. MC-C-10917, MC-153325 (Sub-No. 2), MC-C-10943 (Dec. 30, 1987) (citing H.R.Rep. No. 100-27, 100th Cong., 1st Sess. 241-42, reprinted in 1987 U.S.Code Cong. & Admin.News 66, 225-26).[5]
 
 
 9
 To show the substantiality of interstate traffic, the ICC stated that:
 
 
 10
 a carrier should submit evidence that over a reasonable period of time it has carried a substantial number of passengers in interstate commerce in the operation. It may rely on traffic studies or data of a similarly specific nature to show the number of interstate passengers. It must show that the intrastate operation is not independent but is part of the interstate service. Since the interstate traffic is to be substantial in relation to the intrastate in that same operation, the information should include intrastate traffic figures by which to establish the substantiality of such interstate traffic. Data addressing the overall level of bus passengers in the area may also be relevant.
 
 
 11
 Funbus, ICC Nos. MC-C-10917, MC-153325 (Sub-No. 2), MC-C-10943 (Dec. 30, 1987).
 
 
 12
 In the instant case, the ICC determined that Collins was operating a legitimate service between Laramie, Wyoming and Stapleton International Airport in Denver, Colorado. While Airporter submitted evidence suggesting that Collins' actual interstate service constituted a small proportion of its total service, the ICC stated that such evidence "merely suggests what might be the proportion of intrastate to interstate traffic in the operation, but it hardly suggests that a legitimate interstate service is not being operated." Collins Coaches Ltd., ICC No. MC-190567 (Jan. 29, 1987). According to the ICC, the statute did not limit the proportion of interstate to intrastate traffic and was satisfied as long as some interstate service was conducted. Id.
 
 
 13
 We will set aside an agency decision that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. Sec. 706(2)(A). The ICC held in the Funbus remand that interstate service must be substantial in order to support the ICC's preemptive power to grant intrastate operating authority. Funbus, ICC Nos. MC-C-10917, MC-153325 (Sub-No. 2), MC-C-10943. The ICC noted further that the interstate traffic must be substantial in relation to the intrastate traffic in that same operation. Id. Given this holding, the proportion of interstate to intrastate traffic is relevant to the issue of the legitimacy of interstate service needed to support intrastate authority, and thus the ICC's holding to the contrary in the instant case is not in accordance with the law. We therefore reverse this portion of the ICC's decision and remand for consideration of the proper relationship between Collins' interstate and intrastate service in accordance with the guidelines discussed in the Funbus remand.
 
 II.
 
 14
 Airporter also requested discovery and an oral hearing pursuant to 49 C.F.R. Secs. 1114.21(b)(1) and 1160.68, respectively. The ICC denied both requests. We affirm the ICC's ruling in this regard.
 
 
 15
 A person may object to the issuance of a motor common carrier certificate on the grounds that the transportation sought to be authorized is not consistent with the public interest. 49 U.S.C. Sec. 10922(c)(2)(B). Although several factors may provide the focus for a public interest protest to the issuance of a certificate,[6] Airporter limited its claim on appeal to consideration of whether the issuance of a certificate would impair the ability of another motor common carrier of passengers to provide a substantial portion of the regular-route passenger service which such carrier provides over its entire regular-route system.
 
 
 16
 Airporter claims that because Collins' operations were being tailored to compete directly on an intrastate basis with Airporter, Airporter's service was in jeopardy. Airporter contends that by denying the discovery request, the ICC deprived Airporter of the opportunity to meet its burden of proof through proper discovery. However, with regard to its financial ability to provide a substantial portion of its regular-route service over its entire regular-route system, Airporter needs no discovery of Collins to show whether its own service is in jeopardy. Further, because Collins was operating under a grant of temporary authority during the pendency of these permanent certification proceedings, information regarding Collins' actual service was available to Airporter through means independent of discovery. See Lakeland Bus Lines v. I.C.C., 810 F.2d 280, 287 (D.C.Cir.1987). In fact, Airporter submitted affidavits reflecting detailed observation of the operations of Collins' vans. Rec. vol. I, doc. 14. For these reasons, discovery of Collins is unnecessary, and we affirm the denial of the discovery requests.
 
 
 17
 With regard to the issue of an oral hearing, regulations provide for such "only where use of modified procedures would prejudice a party, material issues of decisional fact cannot adequately be resolved without an oral hearing, or assignment of an application for oral hearing is otherwise required by the public interest." 49 C.F.R. Sec. 1160.68(c). On appeal, Airporter asserts none of these grounds for requesting an oral hearing, instead stating only that the ICC wrongfully precluded it from presenting at an evidentiary hearing the information it wished to obtain through discovery. Because Airporter seems only to desire a forum to present information to be obtained from discovery that was properly denied, we affirm the ICC's denial of Airporter's request for an oral hearing.
 
 III.
 
 18
 We remand this matter to the ICC for a determination of the proper relationship between Collins' interstate and intrastate services. The affirmance of the ICC's denial of Airporter's requests for discovery and oral hearing is without prejudice to Airporter's right to renew such requests in subsequent proceedings.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [2]
 49 U.S.C. Sec. 10922(c)(2)(B) provides:
 The Commission shall issue a certificate to a person authorizing that person to provide regular-route transportation entirely in one State as a motor common carrier of passengers if such intrastate transportation is to be provided on a route over which the carrier has been granted authority, or will be granted authority, after the effective date of this section to provide interstate transportation of passengers if the Commission finds that the person is fit, willing, and able to provide the intrastate transportation to be authorized by the certificate and to comply with this subtitle and regulations of the Commission, unless the Commission finds, on the basis of evidence presented by any person objecting to the issuance of the certificate, that the transportation to be authorized is not consistent with the public interest.
 
 
 [3]
 Greeley Commuter System, Ltd., also protested Collins' application and participated in the appeal before the ICC, but is not a party to this petition
 
 
 [4]
 28 U.S.C. Sec. 2342 provides in pertinent part:
 The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 (5) all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title and all final orders of such Commission made reviewable under section 11901(j)(2) of title 49, United States Code.
 
 
 [5]
 The decision of the ICC in the Funbus remand was rendered after the ICC decision being appealed in the instant action
 
 
 [6]
 These factors include:
 (A) the transportation policy of section 10101(a) of this title;
 (B) the value of competition to the traveling and shipping public;
 (C) the effect of issuance of the certificate on motor carrier of passenger service to small communities;
 (D) whether issuance of the certificate would impair the ability of any other motor common carrier of passengers to provide a substantial portion of the regular-route passenger service which such carrier provides over its entire regular-route system; except that diversion of revenue or traffic from a motor common carrier of passengers in and of itself shall not be sufficient to support a finding that issuance of the certificate would impair the ability of the carrier to provide a substantial portion of the regular-route passenger service which the carrier provides over its entire regular-route system; and
 (E) the amount and extent of governmental financial assistance which the applicant for the certificate received before, on, or after the date of the enactment of this subparagraph for the purchase or operation of buses.
 49 U.S.C. Sec. 10922(c)(3).