873 F.2d 408
 277 U.S.App.D.C. 195, 57 USLW 2691
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PETER PAN BUS LINES, INC., et al., Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
GLI Acquisition Company and Kansas Corporation Commission,
Intervenors.
 Nos. 88-1532, 88-1556 and 88-1567.
 United States Court of Appeals, District of Columbia Circuit.
 May 8, 1989.
 
 Before MIKVA, BUCKLEY and STEPHEN F. WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 The petitions for review of orders of the Interstate Commerce Commission were briefed and argued by counsel. On full consideration of the issues presented, the Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petitions for review are denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See Local Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Petitioners Peter Pan Bus Lines, Inc. ("Peter Pan"), Valley Transit Company, Inc. ("Valley"), and Capital Motor Lines d/b/a Capital Trailways ("Capital"), challenge an order of the Interstate Commerce Commission ("Commission") approving the application of GLI Acquisition Company ("Greyhound") to acquire the interstate operating authorities and principal operating assets of Trailways Lines, Inc. ("Trailways"). GLI Acquisition Co.--Purchase--Trailways Lines, Inc., MC-F-18505 (served June 7, 1988) ("Decision "). Petitioners claim that the Commission's use of its "modified procedure," under which the evidentiary record consists entirely of written statements, see 49 C.F.R. Sec. 1182.1(a), and its denial of petitioners' requests for discovery and oral hearing, rendered the decision arbitrary and capricious. We deny the petitions because we find the Commission's procedural decisions well within its broad discretion. See Trailways Lines, Inc. v. ICC, 766 F.2d 1537, 1546 (D.C.Cir.1985); see also Lakeland Bus Lines, Inc. v. ICC, 810 F.2d 280, 285-88 (D.C.Cir.1987); Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519, 524 (1978).
 
 
 5
 We uphold the Commission's use of its modified procedure in this case primarily because petitioners were in fact given a full opportunity to respond to Greyhound's evidentiary submissions. Thus, even if Greyhound's initial application were in some way deficient, petitioners were not prejudiced by the timing of the application and the supporting evidence, because they were able to supplement the record with their own evidence. Indeed, petitioners protest that they were given insufficient opportunity to respond to Greyhound's submissions, yet assert in the same breath that the record is replete with petitioners' opposition to the application. Reviewing the record as a whole, we cannot conclude that the Commission's proceedings were conducted so unreasonably so as to constitute an abuse of discretion.
 
 
 6
 Moreover, we note that this court has upheld the Commission's use of its modified procedure in similar circumstances. See Lakeland Bus Lines, 810 F.2d at 288 n. 8; cf. American Transfer & Storage Co. v. ICC, 719 F.2d 1283, 1298-306 (5th Cir.1983). Petitioners cite Cross-Sound Ferry Services, Inc. v. ICC, 738 F.2d 481 (D.C.Cir.1984) as requiring remand in this case, but Cross-Sound is easily distinguishable. Not only did Cross-Sound involve a stricter public-interest standard than this case, see Lakeland Bus Lines, 810 F.2d at 285 n. 4, but the Commission in that case "articulated no specific basis for its conclusion [and] neither made basic factual findings nor explained how the record supports its decision * * *." Cross-Sound, 738 F.2d at 485. In this case, by contrast, the Commission adequately explained its decision and did not refuse to consider the information presented by petitioners.
 
 
 7
 Petitioners also argue that a departure from the modified procedure is warranted because this transaction would merge the two largest bus companies in the nation; thus this case necessarily "involves extraordinary substantive issues" which must be resolved at an oral hearing, see 49 C.F.R. Sec. 1182.1(a). We reject this reading of the regulation. Neither the magnitude of the transaction nor the size of the applicant inevitably transforms the issues before the Commission into extraordinarily important ones, and the Commission had the discretion to determine whether the issues involved in this particular applicaiton required an oral hearing.
 
 
 8
 Finally, to the extent that petitioners implicitly challenge the merits of the Commission's decision, petitioners have not met the substantial burden in overcoming the strong presumption of regularity in administrative proceedings. See National Small Shipments Traffic Conference, Inc. v. ICC, 725 F.2d 1442, 1450, 1455 (D.C.Cir.1984); Braniff Airways, Inc. v. Civil Aeronautics Board, 379 F.2d 453, 460 (D.C.Cir.1967). Petitioners have simply failed to show how the Commission's use of its modified procedure resulted in a failure to engage in reasoned decisionmaking.
 
 
 9
 Petitioners also raise a number of specific objections to the Commission's procedures. In view of the deference that this court accords the Commission's procedural decisions, see Vermont Yankee, 435 U.S. at 524, we find petitioners' contentions unavailing.
 
 
 10
 Peter Pan's claim that the Commission's procedures precluded the submission of probative evidence regarding loading docks at the New York Port Authority Terminal is not supported by the record. Peter Pan asserts that the Commission based its decision not to impose a protective condition guaranteeing Peter Pan two loading docks on the north side of the New York Port Authority Terminal (where the merged Greyhound/Trailways docks are located) on the false premise that there were no gates to assign. The Commission, however, never indicated that it relied on such a premise. Instead, it ruled that "Greyhound, as a private business, should have no obligation to let others, particularly competitors, use its facilities at less than a mutually agreed upon rate." Decision at 18. Specifically, the Commission found that there was no reason to give Peter Pan such preferential treatment, especially in light of the continuing regulatory oversight that would be required. Decision at 19. Similarly, the Commission's reference to perpetual rights to the two docking spaces, with which Peter Pan takes issue, was also not essential to its reasoning or decision. We therefore conclude that the Commission adequately explained its decision not to impose the requested protective condition on the transaction and did not abuse its discretion in denying Peter Pan's request for an oral hearing on the matter.
 
 
 11
 With regard to Valley's claim that the Commission unreasonably denied its requests for discovery concerning allegations of unannounced scheduling changes in late 1987 and early 1988, we note that in light of the written submissions on both sides of the issue (Greyhound contended that Valley initiated the unannounced schedule changes), the Commission could reasonably have concluded that discovery on this issue would be unnecessarily time-consuming and would not, in any event, have affected the Commission's decision. Cf. Trailways, 766 F.2d at 546 ("In an age of discovery run riot, the Commission was simply not required to allow a dragnet, expensive exercise of discovery into Greyhound's business when that discovery was seen by the agency as most unlikely to affect its decision."). Given the considerable deference owed the Commission's decisions regarding discovery, see Lakeland Bus Lines, 810 F.2d at 286, and because the issue raised by Valley arguably was not material to the decision, we conclude that the Commission did not abuse its discretion in denying Valley's request. Likewise, the Commission was within its discretion in declining to order an oral hearing on the issue.
 
 
 12
 We also uphold the Commission's ruling rejecting Valley's contention that certain protective conditions were necessary to preserve intercity bus competition in regional submarkets. The Commission explained that intercity bus transportation was subject to competition from other modes of intercity transportation (e.g., private automobiles, airlines, and Amtrak) and that therefore competition in this national market was necessary to promote the public interest. Decision at 10. Moreover, the Commission reasoned that, even in rural markets, the consolidation would have little effect because intermodal competition would provide a sufficient cap on unreasonably high prices or inadequate service. Id. at 7. Ultimately, the Commission, recognizing that the failing Trailways system was a national system, determined that the national needs of the traveling public must outweigh even the survival interests of regional carriers such as Valley. Id. at 17 n. 9. Given the deference owed the Commission's policy decisions, see International Brotherhood of Teamsters v. ICC, 818 F.2d 87, 90 (D.C.Cir.1987), and because we must refrain from re-weighing the evidence, we cannot say that the Commission's reasonably explained interpretation is arbitrary or capricious.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 We have also considered petitioners other arguments, which we find unpersuasive. Petitioners' objections simply do not overcome the deference accorded the Commission regarding its own procedures. Accordingly, the petitions for review are
 
 
 16
 Denied.